SHACKLEFORD & DICKEY v. INDEMNITY FIRE INSURANCE COMPANY.

FILED FEBRUARY 8, 1906.    No. 13,988.

Insurance: AUTHORITY OF AGENT. From the mere fact that one delivered a policy of fire insurance, in the preparation or execution of which he did not participate, and is not shown to have been authorized to participate, it cannot be inferred that he had authority to modify the contract or to waive any of its covenants or stipulations.

ERROR to the district court for Douglas county: EDMUND M. BARTLETT, JUDGE. Affirmed.

Cunningham R. Scott and E. H. Scott, for plaintiffs in error.

McGilton, Gaines & Storey and E. R. Duffie, contra.

AMES, C.

The defendant in error, which was also defendant below, issued and delivered to the plaintiffs a policy of fire insurance on certain personal property to be and remain in force during a certain interval of time while the property should be contained in a certain building at 1510 California street, in the city of Omaha, "and not elsewhere." The policy stipulated that it should "not be valid until countersigned by the duly authorized agent of the the company at Omaha, Neb.," and it was countersigned by one C. D. Mullen as such agent, but was delivered to the plaintiffs by one Charles O. Talmage in exchange for a like policy on the same property previously issued through the same agency by another company. At the time of the delivery of the first mentioned policy, Talmage agreed that the premium thereon should be satisfied by the application thereto of the amount of unearned premium to which the plaintiffs were entitled on the policy taken up,

and it does not appear that there was any other payment of premium on the new policy. This transaction was on the 25th day of March, 1902, and the period of insurance recited in the contract was of one year from that date. Shortly before the first day of May, 1902, the plaintiffs told Talmage that they intended to remove the insured property on that date to another building situated on a different street in the city, and that they should want insurance, after the removal, in the new location. To this Talmage replied that he would leave the policy with the plaintiffs, and that when they moved he would have it fixed so that it would be good at the new place.. He said: "All right, go ahead and move, and I will see that your transfer is made, when your property is moved," he says, "I will see to it."

Q. "Is that all that he said?"

A. "Well, that is about all that I recollect in regard to it." *  *  *

Q. "What was said?"

A. "I said: 'Mr. Talmage, we have begun to move, and we will have everything moved by the first of May,' I says, 'we have to give possession in here, the property is sold where we are, and we will have everything on the grounds up there by the first of May, and I want our insurance transferred by the first day of May,' I says, 'we will stand less risk at that time than any other time, and we will have to have everything away from here by the first, and so I want the transfer made by the first'; and he said: 'All right, I will see to it, now give yourselves no uneasiness or anything about it,' he says 'I will see to it myself and see that your transfer is made by the first day of May.'"

The foregoing is the substance of all the evidence upon this branch of the case, and from it we are unable to infer with any degree of certainty what were the relations of Talmage with the defendant company. He does not appear to have written or signed the instrument, or to have joined or participated in so doing, or to have received, or to have been authorized to receive, the premium upon that

or any other policy issued by this or any other company,
nor did he promise to make any indorsement upon the in-
strument, or enter on behalf of the company or otherwise
into any contract or stipulation with reference to it or to
the removal.   His sole promise was that he would see to
it himself "and see that your transfer is made by the first
day of May," that is, that he would see that it was done,
not that he would do it.   But if he had promised to do the
act himself, such promise would have been no evidence of
authority.   All that is shown that he ever did do on the
behalf of the company, or, perhaps, on the behalf of the
authorized and contracting agent of the company, was to
deliver the policy in question and receive from the insured
the former policy of the other company, and so far as we
know, that was all he ever was employed or authorized to
do.   The policy remained in the possession of the plain-
tiffs, and was never by them presented to Talmage, or
to anyone else, for the purpose of having any indorsement
made upon it, or for the purpose of having it reformed
or modified in any way or manner, and it is the settled
law that without modification or reformation, or some-
thing equivalent thereto, it ceased to be operative or in
force upon the removal of the property from the building
described in it.   *Burlington Ins. Co. v. Campbell*, 42 Neb.
208; *Davison v. London Fire Ins. Co.*, 189 Pa. St. 132.
The mere fact that the company was charged through Tal-
mage with knowledge of the removal after it took place,
if it were so charged, which we do not decide, and that it
remained quiescent, was insufficient to revive its liability.
The contract was terminated by the fact of removal, and
it could have regained vitality only from some affirmative
act by or on behalf of the company equivalent to the mak-
ing of a new contract of insurance.   *Davison v. London
Fire Ins. Co., supra; Connecticut Ins. Co. v. Smith*, 10
Colo. App. 121; *English v. Franklin Fire Ins. Co.*, 55 Mich.
273.   All the foregoing facts were disclosed by the evidence
offered on behalf of the plaintiffs in an action on the policy
for a loss occurring after the removal, at the conclusion

of which the court instructed a verdict for the defendant. We recommend that the judgment be affirmed.

LETTON and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be

AFFIRMED.